E-FILED
Monday, 25 June, 2007  03:16:42 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | | |
|---|---|---|
| IN RE : | ) | |
| | ) | |
| JOHN C. HADLEY and MARY LYDIA | ) | |
| HADLEY, | ) | |
| Debtors. | ) | Case No. 07-CV-2063 |
| _____ | ) | |
| MARINE BANK, SPRINGFIELD, | ) | |
| | ) | |
| Creditor - Appellant, | ) | Appeal from United States |
| v. | ) | Bankruptcy Court in Bankruptcy |
| | ) | Case No. 04-92955, |
| JOHN C. HADLEY and MARY LYDIA | ) | Adversary Case No. 06-09015 |
| HADLEY, | ) | |
| | ) | |
| Debtors - Appellees. | ) | |

## OPINION

This case is before the court for ruling on various Motions filed by Debtors-Appellees, John

C. Hadley and Mary Lydia Hadley (the Debtors), including the Motion to Strike Appeal and to

Dismiss Appeal for Lack of Jurisdiction filed in the Bankruptcy Court.  This court has carefully

considered the arguments of the parties and the record in this case.  Following this careful and

thorough review, this court rules as follows: (1) the Debtors' Motion to Set Hearing on Motion to

Strike Notice of Appeal and to Dismiss Appeal for Lack of Jurisdiction (#9) is DENIED; (2) the

Debtors' Motion for Leave to File Reply (#18) is GRANTED; (3) the Debtors' Motion to Strike

Appeal and to Dismiss Appeal for Lack of Jurisdiction is DENIED, and (4) the Debtors' Motion to

Consolidate Cases (#20) is GRANTED.  This case is hereby consolidated with Case Nos. 07-CV-

2090 and 07-CV-2091.  The briefing schedule for the three consolidated appeals, all of which raise

the same issue, is as follows: the brief of Creditor-Appellant Marine Bank, Springfield (Marine

Bank), is due July 13, 2007, the Debtors' brief is due August 3, 2007, and Marine Bank's reply brief

is due August 17, 2007.

FACTS

The facts underlying the appeal in this case are as follows.  The Debtors operate two businesses as sole proprietorships: a restaurant supply business known as Hadley's Food Service Equipment & Supplies and a coin collectors business known as Gold Nugget.  In addition, the Debtors are significant shareholders of Central Illinois Bank (CIB).  The Debtors had also borrowed significant sums of money from CIB, some of which was used to purchase CIB stock.  According to the Debtors, the total amount of the loans from CIB exceeded $12.3 million. To secure the loans, the Debtors pledged the CIB stock they had purchased along with some of their rare coins and bullion.  When CIB began to experience financial difficulties and became the subject of regulatory action, it demanded that the Debtors repay the amounts they had borrowed to purchase CIB stock.  Because of CIB's difficulties, the value of the Debtors' 1.2 million shares in CIB dropped substantially, making it difficult for the Debtors to find refinancing that would enable them to repay the loans.  The Debtors also discovered that CIB could not find some of the coins and bullion that CIB was holding as collateral.  In June 2004, CIB filed suit against the Debtors to collect the loans and obtained a judgment against the Debtors.  CIB then began to garnish the Debtors' bank accounts.        The Debtors also owed money to Marine Bank.  According to Marine Bank, it is owed $7,058,340.35 by the Debtors.  Therefore, Marine Bank became concerned by CIB's actions. As a result, on August 19, 2004, it filed an involuntary chapter 7 bankruptcy petition against the Debtors to stay CIB's attempts to seize all of the Debtors' assets.  The bankruptcy case is Case No. 04-92665. On December 20, 2004, the case was converted to a chapter 11 bankruptcy case.

On April 4, 2005, the Debtors filed a motion to employ the law firm of Mathis, Marifian,

2

Richter & Grandy, Ltd. (Mathis law firm) to represent them in the bankruptcy proceeding. The Debtors stated that the Mathis law firm specialized in bankruptcy, corporate reorganization and debtor/creditor matters. The Debtors proposed that the Mathis law firm would be compensated on an hourly basis for its work in the general bankruptcy case. In addition, the Debtors sought to retain Timothy Bowden, a lawyer licensed in Tennessee, who they stated had extensive experience in tort litigation. The Debtors stated that they believed that they may have a substantial case against CIB, which was a significant asset of the bankruptcy estate. Therefore, they requested further authority to retain the Mathis law firm and Bowden, on a contigency basis, to investigate and pursue the claim against CIB. They proposed that the attorneys would be paid based upon the following terms: "ten percent (10%) of the first Ten Million Dollars ($10,000,000.00) recovered and thirty (30%) of any funds recovered above that amount." On May 23, 2005, the Bankruptcy Court granted the Debtors' motion. The Bankruptcy Court's order approving this arrangement stated that "all fees and expenses paid by Debtors shall be subject to disgorgement in the event that they are not finally allowed or not properly payable for any reason."

On January 30, 2006, CIB filed an adversary complaint against the Debtors which was docketed in the Bankruptcy Court as Adversary Case No. 06-09015. CIB sought a determination that certain debts and obligations owed by the Debtors to CIB were non-dischargeable in bankruptcy. In response, the Debtors, through their counsel, filed a counterclaim alleging a variety of causes of action related to the fact that CIB had lost or converted the Debtors' rare coins and bullion. In addition, the Debtors sought to avoid the liens granted to CIB, to equitably subordinate CIB's claims and to recover certain payments as preferences. During the course of the Adversary Case, the Debtors and CIB conducted extensive discovery. On March 30, 2006, the Bankruptcy

3

Court entered a pre-trial order and scheduled the case for trial on October 16, 2006.

Prior to trial, on September 13, 2006, CIB and the Debtors participated in a mediation conducted by the Honorable Barry S. Schermer, Chief Judge of the United States Bankruptcy Court for the Eastern District of Missouri. Following mediation, the Debtors and CIB agreed on the terms of a settlement of the Adversary Proceeding. At a status hearing on September 19, 2006, held in the Adversary Case, the Bankruptcy Court set a deadline for the proposed settlement agreement of September 22, 2006.

On October 10, 2006, CIB filed an Emergency Motion to Enforce Settlement Agreement, in which it stated that the Debtors were refusing to execute a term sheet reflecting the terms of the settlement to which they had agreed. CIB recounted the difficulties which had arisen regarding the execution of the term sheet and, among other things, asked the Bankruptcy Court to set a hearing. On October 11, 2006, the Bankruptcy Court granted CIB's Motion and set the matter for a hearing on November 15, 2006.

On October 18, 2006, the Debtors filed an Application to Approve Settlement. The Debtors stated that they believed that the total value of the collateral lost by CIB was in excess of $30 million. The Debtors also stated that CIB was the subject of a Cease and Desist Order issued by the FDIC which, according to CIB, required CIB to maintain a minimum of 8% Tier One Capital as a percentage of its total assets. The Debtors then set out the terms of the settlement agreement. The Debtors stated that, under the terms of the settlement agreement, CIB agreed to discharge the Debtors from any and all claims and judgments and from any and all indebtedness owed by the Debtors to CIB. CIB also agreed to pay the Debtors $1,750,000 and to deliver to the Debtors all tangible personal property currently held as collateral by CIB. The terms also provided that, "[p]rior

4

to the entry of an order in the [Adversary] Case approving the Settlement Agreement," CIB "shall deliver" various documentation to the Debtors, including "financial information to the Hadleys' legal counsel reasonably necessary to allow the Hadleys to verify that the Tier 1 capital of CIB as of June 30, 2006 was approximately $8.5 million in excess of the amount required by the Cease and Desist Order." The Debtors stated that they "agreed to accept the above referenced settlement terms due to the fact that they believed it was the maximum benefit that they could recover for the bankruptcy estate while not causing CIB to go into receivership." The Debtors then calculated that the total benefit to the bankruptcy estate from the settlement was $24,609,880.79.

Two days later, on October 20, 2006, the Mathis law firm and Tim Bowden filed a First Application for Approval of Compensation and Reimbursement (Tort Claim). This request for attorneys' fees was filed in the general bankruptcy case rather than the Adversary Case. The Debtors' attorneys stated that, based upon a total amount of benefits recovered of $24,609,880.79, they were entitled to fees in the amount of $5,382,964.24 plus costs of $174,652.20. They stated that they had agreed to reduce their fees to $2,200,000.00 which would be allocated 74% to the Mathis law firm and 26% to Tim Bowden. The same day, the Mathis law firm filed its Fifth Application for Compensation in the general bankruptcy case, requesting an additional $178,872.50 in hourly fees incurred, as well as $2,998.04 in expenses. The Bankruptcy Court set both requests for attorneys' fees for hearing on November 15, 2006, the same date previously set for a hearing regarding the settlement agreement.

On November 13, 2006, Marine Bank filed a Response to the Application to Approve Settlement and objected to the proposed structure of the settlement. Marine Bank also filed a Motion to Continue the hearing on the attorneys' fees applications. Marine Bank argued that the

Bankruptcy Court should delay a hearing on the two pending attorneys' fees applications until after the Settlement Order was entered.  In addition, Marine Bank argued that the request for $2,200,000, a very significant amount of fees, warranted a full and complete hearing regarding the objections to it.  The Debtors' attorneys filed an Objection to the Motion to Continue hearing the same day. They stated that Marine Bank had had plenty of time to review the fee applications.  They further stated that the "fees due on the tort matter will not be due until the settlement is final.  The settlement is contingent upon verification of financial information.  Thus, approval of the attorney fees is just one step towards consummating the settlements and will avoid an additional hearing in the bankruptcy court."  On November 14, 2006, Marine Bank filed an Objection to both requests for attorneys' fees in the general bankruptcy case.

Also on November 14, 2006, the Debtors filed, in the Adversary Case, a Motion to Enforce Form of Settlement Documents.  The Debtors stated that "[b]oth the Debtors and CIB, together with their respective counsel, have been working diligently for some time to draft certain settlement documents, but despite the good faith efforts of both sides to this litigation the parties have reached an unfortunate impasse as to certain language proposed in two of the settlement documents."  The Debtors requested that the Bankruptcy Court enter an order approving and enforcing the Settlement Agreement and Mutual Confidentiality Agreement attached to the Motion.

On November 15, 2006, the Bankruptcy Court entered an Order denying Marine Bank's Motion to Continue Hearing and the hearing proceeded that day.  At the hearing, the attorneys representing CIB and the Debtors discussed various problems they had encountered in agreeing to the final language of the settlement agreement.  United States Bankruptcy Judge Gerald D. Fines informed the parties that,  if there was no settlement, the case would proceed to trial before a

6

different judge.  During the discussions, an attorney for the Debtors stated that the Debtors' "acceptance of this settlement is contingent upon the truth and accuracy of these material representations, and that but for these material representations made by the CIB, the [Debtors] would not have accepted the settlement."  Judge Fines eventually approved the settlement over Marine Bank's objection.  Judge Fines then proceeded to a hearing regarding the applications for attorneys' fees.  The Debtors' attorneys stated that they were further reducing the fees they were seeking under the contingent fee agreement to $1.4 million plus costs.  Marine Bank objected to this amount of fees, arguing that the actual value of the settlement was approximately $5.5 million, so that a contingency fee should be allowed at 10% of that recovery.  After hearing the arguments, Judge Fines approved both applications for attorneys' fees filed by the Debtors' attorneys.

On November 27, 2006, three separate Orders were entered by Judge Fines.  An Order was entered in the Adversary Case which stated that the Application to Approve Settlement was allowed and Marine Bank's objection was denied.  The Order further stated:

> 5.      CIB shall provide the information necessary to the Hadleys to allow the Hadleys to verify that the tier one capital of CIB as of June 30, 2006 was approximately $8.5 million in excess of the amount required by the Cease and Desist Order as well as financial information to verify that since March 1, 2004, CIB has made no transfer of funds or property to CIB Marine Bancshares, Inc., and that CIB has not transferred any other funds or assets to CIB Marine Bancshares, Inc., or any other subsidiary of CIB Marine Bancshares, Inc. outside of the ordinary course of CIB's business and with the

intention of delaying, hindering, or defrauding the Hadleys.

      6.     The Hadleys shall have 30 days to review said financial information.

      7     The Hadleys shall report back to the Court regarding their findings after reviewing the financial information.  The closing of the settlement shall take place within 10 days after the Hadleys verify to the Court that the financial information reviewed was satisfactory.

The two other Orders were entered in the general bankruptcy case and approved the requests for fees from the Debtors' attorneys.  One Order allowed $178,872.50 for services rendered and $2,998.04 for expenses and advances for a total of $181,870.54 for the period from February 1, 2006 through October 13, 2006.  The other Order stated that the amount of $1,400,000.00 for attorney's fees and $174,652.20 for expenses was allowed and the objection filed by Marine Bank was denied.  This Order stated that the "Co-Applicants shall have a first priority administrative lien on all assets recovered from the Tort Claim to pay the fees and expenses allowed herein.  CIB is directed to issue the settlement check in the amount of $1,750,000.00 directly to Mathis, Marifian, Richter & Grandy, Ltd."

On December 5, 2006, the Debtors filed an Application to Employ an accountant in the general bankruptcy case.  They stated that they required the services of an accountant in order to review the financial information provided by CIB.  The Bankruptcy Court granted this request on December 6, 2007.

The Debtors and CIB had some difficulties regarding the documents CIB was to provide to

the Debtors before the settlement could be closed, and the Debtors requested an extension of the 30 days allowed for review of the financial information.  On January 3, 2007, the Debtors filed a Status Report on Financial Information Review.  In this document, the Debtors stated that the "settlement was contingent upon the Debtors' review of CIB's financial records to verify the representations made by CIB during settlement negotiations."  The Debtors stated that their accountant, in his report, indicated that CIB may have understated its financial condition during settlement negotiations.  The Debtors stated that they had requested additional documents and/or explanations.  CIB filed a Response to the Status Report on January 9, 2007.  CIB stated that the Debtors had received all of the information they had requested, which was more than enough to verify the financial information in the Settlement Agreement.  CIB strongly disputed the Debtors' claim that more information was necessary and argued that the Debtors "must be ordered to close on the settlement."

A hearing was held on January 11, 2007.  At the hearing, an attorney for the Debtors stated that the parties had narrowed their dispute down to a list of documents, which were to be provided within seven days.  The Debtors' attorney asked that a final hearing regarding the settlement be held on February 6, 2007, a date already set in the general bankruptcy case on the second amended disclosure statement regarding the reorganization plan.  The Debtors' attorney and CIB's attorney agreed that, if the settlement did not go through for some reason, the reorganization plan would need to be amended.  Judge Fines stated that, "of course, if the settlement's off, there's a little matter of a trial, too."

On February 1, 2007, the Debtors filed a Supplemental Status Report on Financial Information Review.  In this Report, the Debtors stated that, based upon their accountant's report, CIB misrepresented its financial condition.  The Debtors therefore requested that the Bankruptcy

9

Court determine if there were "material misrepresentations that affect the settlement agreement entered into between the parties."  CIB filed a Response on February 2, 2007.

At the hearing on February 6, 2007, CIB's attorney stated that they had provided the required documentation and they "believed that the verification has shown that the settlement has been verified" so that the Debtors "ought to be ordered to close the deal."  A suggestion was made that the case should go back to Judge Schermer for additional mediation on the dispute between CIB and the Debtors.  The Debtors' attorney stated that they would be willing to go back to mediation.  Some of the creditors argued against mediation and further delay.  Judge Fines noted that he had already approved the settlement twice, once on November 15 and once on November 27.  He then stated, "[h]ere it is months after we had the settlement, and we're still fooling around.  It may be best just to go to trial and get the show on the road."  Following a recess, the Debtors' attorney stated that "so that the case can go forward," the Debtors had decided to accept the settlement "as is."  The Debtors' attorney asked Judge Fines to enter a short order stating that "it's approved."  On February 7, 2007, the Bankruptcy Court entered an Order in the adversary case which stated:

> This matter having come before the Court on the Status
> Report of Financial Information Review filed by Debtors, the
> Supplemental Status Report on Financial Information Review filed
> by the Debtors, and Responses thereto filed by Central Illinois Bank;
> the Court, being fully advised in the premises, finds that the financial
> information has been accepted and that the settlement as originally
> approved by Order on November 27, 2006, is ratified by the parties
> and should now proceed to closing.

10

On February 14, 2007, Marine Bank filed a Notice of Appeal in the general bankruptcy case and appealed from the Order allowing $1,400,000.00 for attorney's fees for the Debtors' attorneys. On February 26, 2007, the Bankruptcy Court entered an order in the Adversary Case dismissing the adversary proceeding. Also on February 26, 2007, a notation was made in the docket of the general bankruptcy case that the adversary case was closed. On February 27, 2007, the Debtors filed a Motion to Strike Notice of Appeal and to Dismiss Appeal for Lack of Jurisdiction in the general bankruptcy case with a Memorandum in Support, arguing that the Notice of Appeal filed February 14, 2007, was not timely. On March 2, 2007, Marine Bank filed a Second Notice of Appeal in the general bankruptcy case. On March 8, 2007, Marine Bank filed a Notice of Appeal in the adversary case. All three Notices of Appeal stated that the Order appealed from was the November 27, 2006 Order awarding the Debtors' attorneys $1,400,000.00 for attorney's fees.

On March 27, 2007, the first appeal was filed in this court. This court then set a briefing schedule. On March 30, 2007, the Debtors filed a Motion to Set Hearing on Motion to Strike Notice of Appeal and to Dismiss Appeal for Lack of Jurisdiction (#9). The Debtors attached a copy of the Motion to Strike Appeal and to Dismiss Appeal for Lack of Jurisdiction (Motion to Strike) and the Memorandum in Support which they had filed in the Bankruptcy Court. In their Motion, the Debtors argued that the final order appealed from was entered on November 27, 2006, and the Notice of Appeal filed by Marine Bank was not filed until February 14, 2007. The Debtors therefore argued that the Notice of Appeal was untimely and the appeal should be dismissed for lack of jurisdiction. The Debtors also filed a Motion to Stay (#10) and asked that the briefing schedule set in this case be stayed pending this court's ruling on the Motion to Strike.

On April 2, 2007, this court entered an Order (#12) which granted the Debtors' Motion to

11

Stay and stayed the briefing schedule in this case pending resolution of the Debtors' Motion to Strike. This court concluded that it was in the best interest of the court and the parties that the briefing schedule be stayed pending this court's resolution of the issue of the timeliness of this appeal from the Bankruptcy Court. This court allowed Marine Bank until April 13, 2007, to file its Response to the Debtors' Motion to Strike.

On April 3, 2007, Marine Bank filed a Motion to Reconsider (#13). Marine Bank stated that this case is one of three separate appeals that it has filed, all of which challenge the Order that awarded the Debtors' attorneys $1.4 million for attorneys' fees. Marine Bank stated that, because of the Debtors' jurisdictional attack on the first appeal, Marine Bank filed the second and third appeals of the same order "to guard against any potential future alternative jurisdictional claims by the Debtors that the first appeal might have been filed too early before the settlement of the Adversary Case was actually complete and final in addition to the Debtors' current claim that the first appeal was filed too late." Marine Bank stated that it assumed that this court will wish to consolidate the three appeals when the second and third appeals are docketed in the near future. Marine Bank argued that the three appeals should be consolidated and the issue of when the November 27, 2006, order became final and ripe for appeal should be decided after the consolidation. Marine Bank further stated that the jurisdictional issue is very complex procedurally. Marine Bank requested that this court reconsider the April 13, 2007, deadline it set for Marine Bank to respond to the Debtors' Motion to Strike and set the response date for a time after the second and third appeals were docketed.

On April 12, 2007, the Debtors filed an Objection to Motion to Reconsider (#15). The Debtors argued that Marine Bank had had sufficient time to prepare a response to their Motion to

Strike, which was filed in the Bankruptcy Court on February 27, 2007.  The Debtors also stated that the issues raised in the second and third appeals were substantially identical and that resolution of the issues in this appeal will resolve the second and third appeals.  The Debtors therefore argued that delay of consideration of the Motion to Strike filed in the first appeal was not in the interests of judicial economy.  Marine Bank filed a Response to Appellees' Objection (#16) the same day. Marine Bank again argued that all three appeals should be consolidated and heard together rather than piecemeal.  Marine Bank also argued that its attorney had not had sufficient time to prepare a response considering the substantial work that had taken place in the bankruptcy case on other issues, as well as his other responsibilities.

On April 13, 2007, this court entered a text order.  This court stated that it remained "convinced that it is in the best interest of the court and the parties that the briefing schedule in this case be stayed pending resolution of the issue of the timeliness of this appeal from the Bankruptcy Court."  Accordingly, Marine Bank's Motion to Reconsider (#13) was DENIED.  This court concluded, however, that Marine Bank had adequately shown that additional time was necessary for it to file its Response to the Motion to Strike.  Marine Bank was allowed until May 4, 2007, to file its Response.

On May 1, 2007, Marine Bank's two other appeals from the Bankruptcy Court were filed. Case No. 07-CV-2090 was assigned to United States District Judge Harold A. Baker.  Case No. 07-CV-2091 was assigned to this court.  The clerk's office noted, in Case No. 07-CV-2091, that the two appeals are identical and the "cases are voluminous."  This court also notes that a huge number of lengthy (and apparently identical) exhibits were filed in both cases.

On May 4, 2007, Marine Bank filed its Brief in Opposition to Appellees' Motion to Strike

Notice of Appeal and to Dismiss Appeal for Lack of Jurisdiction (#17).  On May 14, 2007, the

Debtors filed a Motion for Leave to File (#18) and requested leave to file a Reply to Marine Bank's

Brief.  The Debtors also filed a Motion to Consolidate (#20), asking that the three appeals be

consolidated to avoid to possibility of inconsistent judgments, findings, or rulings.[1]  On May 18,

2007, Marine Bank filed a Response to the Debtors' Motion for Leave to File (#21).

ANALYSIS

I.  MOTION TO SET HEARING

In their Motion, the Debtors asked this court to set a hearing on their Motion to Strike "at

the Court's earliest convenience."  Because this court concludes that the issues raised can be decided

based upon the written submissions of the parties, no hearing is necessary.  Accordingly, the

Debtors' Motion to Set Hearing (#9) is DENIED.

II.  MOTION FOR LEAVE TO FILE

The Debtors have also asked this court for leave to file a Reply to Marine Bank's Brief in

Opposition to the Motion to Strike.  The Debtors stated that Marine Bank's Brief "contains certain

significant misstatements of fact and new legal theories which were not raised before the Bankruptcy

Court which the Debtors believe require a response in order to accurately preserve the record before

this Court."  In its Response to this Motion, Marine Bank stated that it did not oppose the request

to file a Reply if this court believed a Reply would be helpful.  However, Marine Bank stated, for

the record, that it disagreed with the reasons given by the Debtors for filing a Reply.  Marine Bank

asserted that its statement of the facts was both complete and accurate and also asserted that the

---

[1]  The Debtors also filed a Motion to Consolidate Cases in Case No. 07-CV-2090 and
Case No. 07-CV-2091.

Debtors were incorrect in contending that new legal theories were raised.

This court concludes that the Debtors' Reply may be helpful to this court.  In any case, the Reply (#19) has already been filed.  Therefore, the Debtors' Motion for Leave to File (#18) is GRANTED.  This court will consider the Debtors' Reply (#19) in ruling on the Motion to Strike.

### III.  MOTION TO STRIKE

In the Motion to Strike Notice of Appeal and Dismiss Appeal for Lack of Jurisdiction the Debtors filed in the Bankruptcy Court, they argued that the November 27, 2006, Order appealed from was a final and appealable Order.  The Debtors therefore contended that Marine Bank's Notice of Appeal had to be filed within 10 days after the entry of the Order.  They argued that this Order, entered in the general bankruptcy case, was completely separate from the orders entered in the Adversary Case regarding the settlement and had nothing to do with the February 7, 2007, Order entered in the Adversary Case.  They contended that the Notice of Appeal filed on February 14, 2007, was filed too late so that this appeal must be dismissed as untimely.

In its Response, Marine Bank argued that the Bankruptcy Court's Order awarding attorneys fees was an order awarding interim compensation, so it was not a final and appealable order.  Marine Bank argued that the interim order entered here was conditional because the right to the fees was subject to the settlement becoming final.  Marine Bank argued that it was entitled to wait to seek to appeal the order granting the interim fees until after the entry of the February 7, 2007 Order giving final approval to the settlement, so that the settlement could proceed to closing.

In Reply, the Debtors argued that the November 27, 2006, Order of the Bankruptcy Court was a final award of compensation under 11 U.S.C. § 330 and was, therefore, final and appealable. The Debtors also asserted that the Settlement Order of November 27, 2006, was a final order.

Therefore, according to the Debtors, any appeal from the Order awarding attorneys fees had to be filed within 10 days of November 27, 2006.

The issue before this court is whether the November 27, 2006, Order appealed from, which awarded attorneys fees to the Debtors' attorneys in the amount of $1,400,000.00, was a final order, so that a Notice of Appeal had to be filed within 10 days of the Order, or could more accurately be described as an interim order, so that a Notice of Appeal did not need to be filed until after a final order was entered.

The concept of finality in bankruptcy cases "has traditionally been applied 'in a more pragmatic and less technical way . . . than in other situations.'" In re Computer Learning Ctrs., Inc., 407 F.3d 656, 660 (4th Cir. 2005), quoting A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1009 (4th Cir. 1986); see also In re Jartran, 886 F.2d 859, 861 (7th Cir. 1989) (a somewhat relaxed sense of finality traditionally characterizes bankruptcy appeals).  Therefore, "orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case." Computer Learning Ctrs., Inc., 407 F.3d at 660, quoting In re Saco Local Dev. Corp., 711 F.2d 441, 444 (1st Cir. 1983) (Breyer, J.).  Consistent with this "pragmatic" view of finality in the bankruptcy context, "several cases [have] recognize[d] that a bankruptcy court's order of compensation may be considered final 'where the order conclusively determine[s] the entire section 330 compensation to be paid' to the attorneys." Computer Learning Ctrs., Inc., 407 F.3d at 660, quoting In re Boddy, 950 F.2d 334, 336 (6th Cir. 1991).  Courts have recognized, however, that such compensation orders are not normally so conclusive and "an interim award of compensation granted by a bankruptcy court in an ongoing bankruptcy proceeding generally is an interlocutory order not subject to review." Computer Learning Ctrs., Inc., 407 F.3d at 660 (emphasis in original), quoting Boddy, 950 F.2d at

16

336.  An interim fee order becomes final only "when it is no longer subject to modification by the bankruptcy court."  Computer Learning Ctrs., Inc., 407 F.3d at 660, quoting Boddy, 950 F.2d at 336. The Seventh Circuit has specifically noted that "all interim awards of attorney's fees in bankruptcy cases are tentative" and are therefore reviewable and revisable at the end of the case.  Matter of Taxman Clothing Co., 49 F.3d 310, 312, 314 (7th Cir. 1995).  Such an award may therefore be appealed after final judgment is entered.  See Taxman Clothing Co., 49 F.3d at 314; see also In re Litas Int'l, Inc., 316 F.3d 113, 119 (2d Cir. 2003) (appellant could wait for the bankruptcy court to enter a final judgment, and any notice of appeal filed within 10 days of that entry would be timely).

In this case, the Debtors have argued strenuously that the November 27, 2006 Order awarding $1.4 million in attorney's fees was a final order and completely separate from the Order entered on February 7, 2007, which stated that the settlement should proceed to closing.  This court cannot agree.  This court concludes that the record, in fact, shows that the Order was not so "separate" as the Debtors assert.  This is because the award of attorneys' fees was based upon the settlement and was to be paid from the proceeds of the settlement, after the settlement closed. Obviously, if the settlement did not close, the attorneys' fees awarded would not be paid and would be subject to modification.  In addition, the Bankruptcy Court's order allowing the Debtors' motion to employ attorneys indicated that the fees could be "subject to disgorgement in the event that they are not finally allowed or not properly payable for any reason."  See Computer Learning Ctrs., Inc., 407 F.3d at 661-62 (award of fees not final where the fees were subject to reevaluation).

This court also concludes that the Debtors' assertion that the November 27, 2006 Order approving the settlement was a final order is contrary to the record in this case and the Debtors' own statements in the Bankruptcy Court.  Prior to the entry of the Order, on November 13, 2006, the

17

Debtors themselves stated that the "fees due on the tort matter will not be due until the settlement is final.  The settlement is contingent upon verification of financial information.  Thus, approval of the attorney fees is just one step towards consummating the settlements . . . ."  The record in this case shows conclusively that the settlement, though approved by the Bankruptcy Court, was contingent upon the Debtors' review of the financial information provided by CIB.  The record further shows that there were problems with the review of the information and it was possible that the settlement would not go through.  At the hearing held on January 11, 2007, one of the Debtors' attorneys acknowledged that, if the settlement did not go through, the reorganization plan would have to be amended.  The Debtors also argued before the Bankruptcy Court that CIB made misrepresentations affecting the settlement agreement and stated that they would be willing to return to Judge Schermer for additional mediation.  In addition, Judge Fines repeatedly advised the parties that, if the settlement was off, the adversary case would have to be set for trial.  It is apparent from the record that the settlement, though approved by Judge Fines, could have fallen through, resulting in the reevaluation of the attorney's fees awarded based upon the settlement.

This court further concludes that the case law cited by the Debtors does not support their position.  In their Memorandum, the Debtors primarily relied on Leahy v. Bd. of Trs. of Community College Dist. 508, 912 F.2d 917 (7th Cir. 1990), and In re Weinhoeft, 1999 WL 33593715 (C.D. Ill. 1999).  Leahy is not a bankruptcy case and discusses the fact that a separate notice of appeal must be filed in order to appeal an award of sanctions under Rule 11 of the Federal Rules of Civil Procedure entered after the original notice of appeal was filed.  Leahy, 912 F.2d at 923-24.  This court concludes that the case is not remotely on point factually and has no application to this case.  In Weinhoept, United States District Judge Jeanne E. Scott dismissed an appeal from an order

18

approving a proposed settlement in a bankruptcy case. The Notice of Appeal had been filed 11 days

after the entry of the order. The appellants had argued that the bankruptcy court's ruling was an

interlocutory order so that their notice of appeal should be considered a motion for leave to appeal.

Weinhoept, 1999 WL 33593715, at *14. Judge Scott noted that the parties had spent "a good deal

of effort briefing the issue of whether the Bankruptcy order should be considered an interlocutory

ruling or a 'final' order for purposes of appeal." Weinhoept, 1999 WL 33593715, at *14. Judge

Scott concluded, however, that under either circumstance the appeal was untimely. Weinhoept,

1999 WL 33593715, at *14. This court does not disagree with Judge Scott's conclusion, but finds

that the case provides little guidance regarding when an order awarding attorney's fees in a

bankruptcy case should be considered final and appealable.

 This court concludes that the decision in Computer Learning Ctrs., Inc., is well reasoned and

supports a finding that the Order appealed from in this case was not final on November 27, 2006.

In that case, the court concluded that an award of attorney's fees in a bankruptcy case was not a

final, appealable order. In reaching that conclusion, the court considered it significant that portions

of the award had not yet been disbursed and that the award was subject to adjustment at the

conclusion of the bankruptcy case. Computer Learning Ctrs., Inc., 407 F.3d at 661-62.

 In this case, the attorney's fees were to be paid from the proceeds of the settlement at closing,

not before, and the award was subject to adjustment if the settlement did not go through and the

adversary case proceeded to trial. Accordingly, this court agrees with Marine Bank that the Order

awarding attorney's fees based upon the settlement of the Adversary Case was not final until the

settlement was finally approved and proceeded to closing.

 This court additionally notes that the Debtors argued in their Reply that the November 27,

19

2006 Order appealed from was a final order under 11 U.S.C. § 330.  However, the order does not

say that.  This court concludes that the Debtors' argument is basically circular: the order is final

because it was entered pursuant to 11 U.S.C. § 330; it was entered pursuant to 11 U.S.C. § 330

because it is final.  This court does not find this argument to be supported or persuasive.

For all of the reasons stated, the Debtors' Motion to Strike is DENIED.

## IV.  MOTION TO CONSOLIDATE

In the Motion to Consolidate (#20), the Debtors argued that the factual and legal issues raised

in the three appeals "are similar."  They therefore argued that consolidation would serve the interests

of judicial economy and "would avoid the possibility of inconsistent judgments, findings or rulings."

Marine Bank has not responded to this motion.  However, as noted, Marine Bank previously stated

that the three appeals should be consolidated.

This court has reviewed the Notices of Appeal filed in the three cases.  Each Notice of

Appeal is essentially identical and states that the order appealed from is the November 27, 2006

Order which awarded the Debtors' attorneys $1,400,000.00 for attorneys' fees.  The Notice of

Appeal filed in this case states that the November 27, 2006, Order became final on February 7, 2007,

when the Bankruptcy Court entered an Order stating that the settlement should proceed to closing.

The Notices of Appeal filed in the other two cases (one filed in the general bankruptcy case and one

filed in the Adversary Case) state that the November 27, 2006, Order became final on February 26,

2007, based upon the parties' Stipulation that was filed after the parties consummated and closed

their settlement upon which the attorneys' fees award was based.

Because all three appeals are challenging the same Order and raise the same issues, this court

agrees with the parties that the three appeals should be consolidated.  There is certainly no reason

20

for this court and Judge Baker to review the same Order on appeal.

Consequently, the Debtors' Motion to Consolidate (#20) is GRANTED.  This case is hereby consolidated with Case Nos. 07-CV-2090 and 07-CV-2091.  Following the entry of this Opinion, a text order will be entered in Case No. 07-CV-2090 granting the Motion to Consolidate filed in that case and reassigning the case to this court.  A text order will also be entered in Case No. 07-2091 granting the motion to consolidate filed in that case.

The briefing schedule for the three consolidated appeals, all of which raise the same issue, is as follows: Marine Bank's brief is due July 13, 2007, the Debtors' brief is due August 3, 2007, and Marine Bank's reply brief is due August 17, 2007.

IT IS THEREFORE ORDERED THAT:

(1) The Debtors' Motion to Set Hearing on Motion to Strike Notice of Appeal and to Dismiss Appeal for Lack of Jurisdiction (#9) is DENIED.  This court concludes that it is able to rule based upon the written submissions of the parties.

(2) The Debtors' Motion for Leave to File Reply (#18) is GRANTED.  The Debtors' Reply has been filed as Document #19 and has been considered by this court in ruling on the Motion to Strike.

(3) The Debtors' Motion to Strike Notice of Appeal and to Dismiss Appeal for Lack of Jurisdiction, filed in the Bankruptcy Court, is DENIED.

(4) The Debtors' Motion to Consolidate Cases (#20) is GRANTED.  This case is hereby consolidated with Case Nos. 07-CV-2090 and 07-CV-2091.  Following the entry of this Opinion, a text order will be entered in Case No. 07-CV-2090 granting the Motion to Consolidate filed in that case and reassigning the case to this court.  A text order will also be entered in Case No. 07-2091

21

granting the motion to consolidate filed in that case.

(5)  The briefing schedule for the three consolidated appeals, all of which raise the same issue, is as follows: Marine Bank's brief is due July 13, 2007, the Debtors' brief is due August 3, 2007, and Marine Bank's reply brief is due August 17, 2007.

ENTERED this 25th day of June, 2007

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE